### THE IJSELHAVEN.

### THE JOBSHAVEN.

(District Court, E. D. New York. June 24, 1919.)

CONTRACTS ☞137(1)—ACTIONS—ILLEGAL PROVISIONS.

    A party may be relieved from a contract containing illegal provisions, but if he accepts the contract and retains the consideration he has a right to be relieved only from the amount of damage caused by the illegal provisions.

In Admiralty. Suits by the C. F. Starita Company, Incorporated, against the steamship Ijselhaven and against the steamship Jobshaven. Decrees for libelant.

Bullowa & Bullowa, of New York City, for libelant.
Kirlin, Woolsey & Hickox, of New York City, for claimants.

CHATFIELD, District Judge. On or about September 25, 1917, the libelant undertook to remove certain coal from the bunkers of the two steamers above named. These boats belonged to the fleet of Dutch vessels which had been lying in the Hudson river for many months awaiting agreement as to grain cargoes from the United States to Holland. The coal became ignited through spontaneous combustion and was actually removed in a smoldering or burning condition.

The captains of the vessels obtained bids from two stevedores on a basis, in one instance of 75 cents an hour per man, and in another of 53 cents an hour per man, and the libelant, who usually did the stevedoring for these vessels, agreed to do it at 50 cents per hour per man. There was to be an increase of 50 per cent. for night work, with double price for Sunday work, and 10 per cent. was to be added as a bonus to the stevedore for supervising the work.

The coal was removed, and ultimately, on a demand for interest if the bill was not paid, the master of each vessel paid on account the sum deemed due under the contract as modified, but refused to pay the increased rate demanded by the libelant, and suit has been brought for the balance.

It appears from the testimony that on or about October 1, 1917, an expected increase in the ordinary wages of stevedores occurred, and the masters of the vessels, accepting this increase, allege that it was the only modification asked for or agreed to. It also appears that, about the 1st of October, dispute had arisen as to the rate for removing "burnt cargo and coal." The stevedores' union compelled a change of wages, and the result was that the libelant finally made up its bill in these cases at the rate of $1.10 per hour for day work, $1.60 for night work, and $2.10 per hour for Sunday work. The basis of this charge was a classification of the burning cargo and coal under the head of "damaged cargo," to be paid for at the rate of double time. Thus a 50-cent charge became $1, and with 10 per cent. profit added made the $1.10, on the basis of which the bill was made up.

The stevedores claim that they found themselves the victims of misrepresentation, in that the captains are alleged to have assured them that the fire in the coal had been put out, but that they found after starting work that it was still burning, and that they had to handle burning, instead of merely warm, coal.

There is little basis for this claim. The testimony of all the parties shows an understanding that the coal had been on fire, and that it was still smoldering or that the fire had been temporarily subdued. The men apparently refused to work for the price and under the conditions which both parties anticipated, but there is no evidence that the boats guaranteed or represented that no fire would be found. The purpose of removing it was to get it out of the way, because it was burning or would start to burn again.

The real issue in the case is whether or not the stevedores agreed to perform the work as a whole at the flat contract rate, or whether, upon the threat of strike and change in the union rate of payment,

the price was increased. There is nothing in the testimony to indicate that the steamships or their officers had anything to do with subsequent negotiations or conferences as to what classification should apply. When the contract was made, there was apparently no reservation with reference to strikes, and the compensation was to be at a flat rate for the entire contract. There was nothing to indicate any agreement to pay for stevedores' services at some rate which might be agreed upon between representatives of the government, the stevedores' union, the boat owners, the railroads, etc.; but, when strike was threatened, there was an immediate agreement on the part of the captains to have the work completed without delay, and it is evident that the compensation was left for later arbitration. An expected increase on October 1st entered into the conversation, and all the parties to the controversy, including the stevedores, seem to have anticipated that the contract should be modified, in any event, so as to include this increase of compensation.

But the purpose of the strike was to secure a double-time rate. The agreement to call the strike off was an agreement to pay such increased demand as might be necessary, and surely the libelant would not agree to settle a strike, in which its employés were demanding double wages, upon a promise by the captains of the steamers to modify their contract to the extent of 10 per cent. If the captains had refused to modify their original contract, and there had been negotiations between the captains and the libelant, as to whether the libelant was bound to perform the contract at the original rate, a compromise for a 10 per cent. advance might have been possible. But no such compromise is shown. The captains immediately agreed to the increase, and the only dispute is as to what that increase was to be.

The amount claimed by the libelant has been actually expended. In this they have included a 10 per cent. profit. There is some suggestion that the libelant was expected to or had agreed to pay a commission to the captains of the vessels, and this is made the basis of a defense that the transaction is illegal, because it involved a violation of section 439 of the Penal Law of the state of New York (Consol. Laws, c. 40).

There is no definite evidence that this section ever was violated, and, if it had been, the illegal payment would have been null, so far as it formed a part of the contract. But there is nothing in this statute which makes the entire contract illegal or void, where the contract itself was repudiated, and where the consideration for the contract was retained by the party pleading illegality as a defense. A party may be relieved from a contract procured through illegal means, but, if he accepts the contract and retains the consideration, he has a right to be relieved only from the amount of damage caused by the illegal transaction, i. e., the amount improperly paid as commission.

This defense, therefore, does not affect the present case, and the libelant should recover.